UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| LINDA VAUGHN and DOUGLAS VAUGHN,<br><br>PLAINTIFFS,<br><br>v.<br><br>KEVIN A O'KOON, M.D.; KENTUCKIANA SURGICAL SPECIALISTS, P.S.C.; MICHAEL G. HUGHES, JR., M.D.; VANGUARD SURGICAL LLC; C.R. BARD INC.; BECTON, DICKINSON AND COMPANY and DAVOL, INC.,,<br><br>DEFENDANTS. | CIVIL ACTION NO. 3:22CV-576-RGJ<br><br>Removed from the Jefferson Circuit Court, Case No. 22-CI-005145 |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants C. R. Bard, Inc., Becton, Dickinson and Company, and Davol Inc., (collectively, "Bard") hereby remove this action captioned *Linda Vaughn et al. v. C. R. Bard, Inc. et al.*, from the Jefferson Circuit Court, Jefferson County, Kentucky, to the United States District Court for the Western District of Kentucky. Complete diversity of citizenship exists between the properly named parties and the amount in controversy exceeds $75,000, exclusive of interests and costs. In support of removal, Bard further states:

**I. PROCEDURAL BACKGROUND AND RELEVANT FACTS**

1. On October 4, 2022, a civil action was commenced by Plaintiffs Linda Vaughn and Douglas Vaughn, ("Plaintiffs") in the Jefferson Circuit Court, Jefferson County, Kentucky, by the filing of a complaint captioned *Linda Vaughn et al. v. C. R. Bard, Inc. et al.,* Case No. 22-CI-0051-15 (the "Complaint").

2. C. R. Bard, Inc. ("Bard") was served with the Summons and Complaint on October 11, 2022.

3. Becton, Dickinson and Company ("BD") was served with the Summons and Complaint on October 11, 2022.

4. Davol Inc. ("Davol") was served with the Summons and Complaint on October 11, 2022.

5. Under 28 U.S.C. § 1446(b)(1), "all defendants who have been properly joined and served must join in or consent to the removal of the action." Therefore, Bard, BD, and Davol, (collectively, "Bard"), the only properly joined and served defendants, consent to the removal of this action.

6. To the best of Bard's knowledge, on information and belief, Defendants Michael G. Hughes, Jr., M.D., and Vanguard Surgical LLC (collectively, "Dr. Hughes") have not yet been served with a copy of the Summons and the Complaint. The consent of unserved defendants is not required for removal. *See, e.g.*, 28 U.S.C. § 1441(b); *McCall v. Scott*, 239 F.3d 808, 813 n.2 (6th Cir. 2001) (recognizing that "the inclusion of an unserved resident defendant in the action does not defeat removal under 28 U.S.C. § 1441(b)").

7. Although Kevin O'Koon, M.D., and Kentuckiana Surgical Specialists, P.S.C., have answered in the state court action, their consent to remove is also not necessary because they, like Dr. Hughes and Vanguard Surgical, LLC (all collectively "Health Care Defendants") are fraudulently joined in this action. *See Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 951 (6th Cir. 2011) ("[A] party who removes a case involving non-diverse parties to federal court on diversity grounds will defeat a motion to remand if it can show that the non-diverse parties were fraudulently joined.").

8. This action involves allegations relating to a "Davol Soft mesh implant" which Plaintiffs allege was manufactured and sold by Bard.[1] *See* Compl. at ¶ 35. Plaintiffs allege on October 6, 2021, Plaintiff Linda Vaughn had "an open hernia repair and abdominal wall reconstruction," using a "C.R. Bard: Davol soft mesh implant." Compl. at ¶¶ 33-35. Plaintiffs further allege as a result of alleged defects in the Davol soft mesh implant, Plaintiff Linda Vaughn developed an infection, "endur[ing], and will in the future endure, conscious mental, emotional, and physical pain and suffering, including the loss of enjoyment of life," and experienced "excruciating pain due to these complications." *Id.* at ¶¶ 25, 41.

9. Plaintiffs assert product liability claims against Bard, including strict liability design, warning, and manufacturing defects; Compl., at ¶¶ 97-128; negligence and gross negligence ¶¶ (129-134); negligence per se (135-142); consumer protection ¶¶ (143-151); breach of warranty ¶¶ (152-158); negligent and intentional infliction of emotional distress ¶¶ (163-173); and fraud, fraudulent misrepresentation, and concealment ¶¶ (174-184). Plaintiffs also attempt to allege battery and lack of informed consent; *see id.*, at ¶¶ (77-90), negligence and gross negligence claims ¶¶ (91-96) against the Healthcare Defendants. Finally, Plaintiffs attempt to bring claims for loss of consortium *see id.*, at ¶¶ (185-186), and punitive damages ¶¶ (187-193) against Bard and the Healthcare Defendants.

10. No previous request has been made for the relief requested herein.

11. No party in interest properly joined and served as a defendant in this action is a citizen of the state (Kentucky) in which this action was brought. *See* 28 U.S.C. § 1441(b).

---

[1] Bard does not admit any liability or waive any defenses in removing this action, including with respect to product identification.

12. The United States District Court for the Western District of Kentucky comprises the county in which this matter is now pending (Jefferson County, Kentucky) and thus, pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. § 97(b), venue is proper.

## II. THIS NOTICE OF REMOVAL IS TIMELY

13. This Notice of Removal is filed within 30 days after Bard's receipt, through service or otherwise, of the initial pleading setting forth a claim for relief upon which this action is based. *See* 28 U.S.C. § 1446(b). Accordingly, Bard's removal of this action is timely.

14. As more fully set forth below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because Bard has satisfied the procedural requirements for removal and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. In filing this Notice of Removal, Bard reserves all defenses, including but not limited to lack of personal jurisdiction, improper venue, insufficient process, insufficient service of process, and failure to join and/or misjoinder of parties.

## III. JURISDICTION AND VENUE ARE PROPER

### A. There Is Complete Diversity of Citizenship Between Plaintiffs and All Properly Joined and Served Defendants

15. This Court has jurisdiction over this removed action pursuant to 28 U.S.C. §§ 1332 and 1441. Pursuant to 28 U.S.C. §1332(a), this Court has original jurisdiction over this action because complete diversity of citizenship exists between Plaintiffs and all properly joined and served Defendants, and the amount in controversy exceeds $75,000, exclusive of interests and costs.[2]

---

[2] After removal, Bard intends to seek transfer of this action to *In Re: Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation,* Case No. 2:18-md-2846, MDL No. 2846 (S.D.OH) ("MDL 2846"), because this case is one of many that have been filed in both federal and state courts across the country involving Bard's hernia repair devices made, at least in part, with polypropylene, including the product at issue in this action. This action belongs in MDL 2846 to facilitate judicial economy and coordinated pretrial proceedings, and, because there are at least seven other similar cases in the MDL involving product liability claims against Bard and medical

16. The Complaint alleges Plaintiff Linda Vaughn "is and was at all times a resident of McCreary County, Kentucky." Compl., at ¶ 1.

17. The Complaint alleges Plaintiff Douglas Vaughn "is and was at all times a resident of McCreary County, Kentucky." *Id*., at ¶ 2.

18. C. R. Bard, Inc. is, and was at the time Plaintiffs commenced this action, a corporation organized under the laws of the State of New Jersey with its principal place of business in New Jersey and therefore, is a citizen of New Jersey for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

19. Becton, Dickinson and Company is, and was at the time Plaintiffs commenced this action, a corporation organized under the laws of the State of New Jersey with its principal place of business in New Jersey and therefore, is a citizen of New Jersey for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

20. Davol Inc. is, and was at the time Plaintiffs commenced this action, a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Rhode Island. Therefore, Davol Inc. is a citizen of Delaware and Rhode Island. *See* 28 U.S.C. § 1332(c).

21. Upon information and belief, "Defendant Kevin A. O'Koon, M.D., is a resident of Jefferson County, Kentucky," and "a physician licensed in the Commonwealth of Kentucky." Compl., at ¶ 3.

---

malpractice claims against healthcare providers. In fact, the JPML recently transferred a similar action involving product liability claims against Bard and medical negligence claims against healthcare providers. *See* **Exhibit 1**, *In Re. Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation,* Case No. MDL 2846 (Oct. 6, 2022, JPML).

22. Upon information and belief, "Kentuckiana Surgical Specialists, P.S.C., is a Kentucky professional services corporation authorized to do business in Kentucky, and in fact doing business in Jefferson County." *Id*. at ¶ 4.

23. Upon information and belief, "Defendant Michael G. Hughes, Jr., M.D., is a resident of Jefferson County, Kentucky." *Id*. at ¶ 6.

24. Upon information and belief, Vanguard Surgical LLC ("Vanguard"), "is a Kentucky limited liability company authorized to do business in Kentucky, and in fact doing business in Jefferson County, Kentucky." *Id*. at ¶ 7.

25. The Healthcare Defendants' citizenship does not preclude the proper removal of this action because they were fraudulently joined in this case. Thus, there is complete diversity of citizenship between Plaintiffs and all properly joined and served Defendants.

### B. The Court Should Disregard The Healthcare Defendants' Citizenship for Jurisdictional Purposes Because They Are Fraudulently Joined in this Action

26. The doctrine of fraudulent joinder represents an exception to the requirement that removal be predicated solely upon complete diversity. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980) ("[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."). Joinder is fraudulent when "a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne ex rel. Ohio v. American Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). As such, "the inquiry is whether [plaintiff] had at least a colorable cause of action against [the defendant] in the Kentucky state courts." *Gipe v. Medtronic, Inc.*, 416 F. Supp. 3d 487, 693 (W.D. Ky. 2019). Finally, in examining fraudulent joinder, a court may consider the Complaint, attachments thereto, and materials submitted with the notice of removal. *See, e.g.*, *Humphrey v. Depuy Orthopaedics, Inc.*, No. 1:11 dp 21817, 2012 U.S. Dist. LEXIS 74461, at *5-6 (N.D. Ohio May 30, 2012) (stating

that the district court may . . . "pierce the pleadings" and consider summary judgment-type evidence in the record).

27. It is apparent that Plaintiffs' Complaint fails to state a cause of action against the Healthcare Defendants. In fact, the substantive allegations against the Healthcare Defendants essentially claim that they implanted a Davol soft mesh implant and that Bard's "Hernia Mesh Devices" are defective due to the "use of polypropylene in the Devices and the immune reactions resulting from such material, cause adverse reactions and injuries," including adhesions, chronic inflammatory and fibrotic reactions, shrinkage, degradation, scar formation, and propensity to infection. Compl., ¶ 57(a)-(m). Additionally, Plaintiffs' claims against the Healthcare Defendants emanate from their allegations that the Davol soft mesh implant became infected due to the characteristics of its design and manufacture using polypropylene, and failure to warn healthcare professionals—including the Healthcare Defendants—but all of these purported defects are traceable only to Bard. *Id*. at ¶¶ 41, 50, 59-60; 64-66, 68-70, 73-75. That is, Plaintiffs allege, "[a]t all material times, Defendants Bard and Davol were responsible for designing, manufacturing, producing, testing, studying, inspecting, labeling, marketing, advertising, selling, promoting, and distributing their Hernia Mesh Devices, and providing warnings/information about the Devices." *Id*. at ¶ 59. The Healthcare Defendants are licensed health care providers who cannot be held liable for allegedly defective products implanted at their hospitals. Accordingly, it is clear that the Healthcare Defendants were fraudulently joined in an attempt to defeat diversity jurisdiction because there is no possibility Plaintiffs could prevail against them on any of their claims under state law.

28. Plaintiffs' claims against the Healthcare Defendants are not viable because licensed heath care providers like the Healthcare Defendants are shielded from liability under Kentucky

law, because they merely supplied the Davol soft mesh implant in its original condition, and could not have known about any purported defects therein. Plaintiffs' claims are governed by the Kentucky Products Liability Act, which provides that a "product liability action" shall include any action brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, testing, listing, certifying, warning, instructing, marketing, advertising, packaging or labeling of any product." Ky. Rev. Stat. § 411.300. Kentucky has a "Middleman Statute," specifically exempting wholesalers, distributors and suppliers of products from liability for defective products when "the product was sold . . . in its original manufactured condition or package, or in the same condition such product was in when received" unless there was a breach of an express warranty or the middleman "knew or should have known" the product was defective. Ky. Rev. Stat. § 411.340.

29. Plaintiffs cannot establish a colorable claim against the Healthcare Defendants under Kentucky law, because they provided the Davol soft mesh implant to Plaintiff Linda Vaughn in its original condition. *Smith v. Wyeth, Inc.*, 488 F.Supp.2d 625, 630 (W.D. Ky. 2007) (denying remand, ruling plaintiff fraudulently joined non-diverse pharmacy who merely "filled the prescription as it was presented to them from the health care providers," and that "no claims [were] cognizable under Kentucky law" under the Middleman Statute).

30. Here, Plaintiffs do not and cannot allege that the Healthcare Defendants made or breached any express warranty, nor do Plaintiffs allege the Healthcare Defendants knew or should have known that the Davol soft mesh implant was defective. In fact, the Complaint alleges the opposite—repeatedly alleging that Bard concealed and/or misrepresented the Davol soft mesh implant's dangers from the public and the Healthcare Defendants. *See* Complaint at ¶ 64 (Bard

"failed to provide sufficient warnings and instructions that would have put Linda, her health care providers, and the general public on notice of the [product's] dangers"); ¶ 74 (claiming Bard failed to "adequately warn or instruct [Plaintiff] and her healthcare providers" about numerous potential complications, including infections); and ¶ 75 (alleging "incomplete and insufficient training and information to physicians regarding the use" of the hernia repair device including aftercare). As such, Plaintiffs cannot establish any claims against the Healthcare Defendants as a matter of Kentucky law, and they are fraudulently joined.

31. Plaintiffs also cannot state any claims against the Healthcare Defendants because they are not engaged in the business of selling medical devices, and provide devices such as the Davol soft mesh implant to patients only subject to their medical judgment and incidental to the provision of medical services. Thus, neither a physician who implants a medical device, nor a hospital who charges a fee for implantation of the product during surgery is a "seller" of the product for purposes of products liability. As licensed health care providers, the Healthcare Defendants are not a manufacturer or seller of any Bard hernia repair devices and are not engaged in the business of selling such products.

32. Therefore, Kentucky law precludes product liability claims against healthcare providers such as the Healthcare Defendants, and the MDL Court recently denied remand and dismissed claims on precisely this basis, ruling that the healthcare provider "[could not] be held liable under a theory of strict products liability for its use of [a Bard hernia repair device]," and was not considered ""a seller of the [device which was used] "in the course of its primary function of providing medical services."" *Leto v. C.R. Bard, Inc.*, No. 2:18-md-2846, 2022 U.S. Dist. LEXIS 181221, at *205, 212 (S.D. Ohio Oct. 3, 2022). The majority of courts nationwide have concluded similarly—physicians and hospitals cannot be liable for products liability because they

are not in the business of selling products that are ultimately implanted in patients. *Johnson v. Zimmer Spine, Inc.*, No. 2:08-CV-00672-KJD-LRL, 2008 U.S. Dist. LEXIS 144619, at *7 (D. Nev. Aug. 8, 2008) ("In the majority of jurisdictions, the doctrine of strict product liability generally is not applied to hospitals, unless the hospital was negligent or involved in intentional misconduct."). Courts reason that hospitals provide professional medical services and a product implanted in a patient is provided as part of that service. For example, in *Johnson*, plaintiff was implanted with a medical device during a surgery to repair his spine, the device was allegedly defective, and he filed suit against the hospital and device manufacturer. 2008 U.S. Dist. LEXIS 144619, at *7, *8. The court concluded that the hospital was not a "seller," because "the essence of the relationship between a hospital and its patients does not relate essentially to any product or piece of equipment . . . **but to the professional services it provides**." *Id*. (citations and quotations omitted) (emphasis added). *See also Hector v. Cedars-Sinai Medical Center*, 180 Cal. App. 3d 493, 505 (1986) (hospital was not subject to strict liability for a defective pacemaker because the "patient does not enter the hospital merely to purchase a pacemaker but to obtain a course of treatment which includes implantation of a pacemaker"); *Vergott v. Deseret Pharm. Co.*, 463 F.2d 12, 16 (5th Cir. 1972) ("a hospital is not a seller engaged in the business of selling the product").[3]

33. The Healthcare Defendants purchased the Davol soft mesh implant repair device from Bard and there is no allegation that they altered the device. Indeed, allegations against the Healthcare Defendants are wholly inconsistent with the gravamen of Plaintiffs' Complaint.

---

[3] *See also Zbras v. St. Vincent's Med. Ctr.*, No. CV95323593S, 2002 WL 532441, at *1 (Conn. Super. Ct. Mar. 20, 2002) (granting summary judgment in favor of hospital defendant who implanted an allegedly defective screw because "hospitals are not engaged in the business of selling equipment utilized in operative procedures but rather are engaged in the business of providing medical services"); *Lederman v. Howmedica Osteonics Corp.*, No. 8:13-cv-506-T-30AEP, 2013 U.S. Dist. LEXIS 51659 (M.D. Fl. April 10, 2013) (physician defendant who implanted a hip prosthesis was fraudulently joined because "strict liability claims are limited to manufacturers and others in the distribution chain" and thus plaintiff's product liability claims fail as a matter of law); *North Miami General Hosp., Inc. v. Goldberg*, 520 So. 2d 650, 652 (Fla. Ct. App. 1988) ("strict liability may not be invoked by patient against a hospital or physician in the use of a defective medical implement).

Plaintiffs' allegations against the Healthcare Defendants, the hospital and healthcare providers responsible for implantation of the Bard hernia device, cannot be reconciled with their core product liability allegations against Bard.

34. The Healthcare Defendants are fraudulently joined in this action, because Plaintiffs' allegations against the Healthcare Defendants do not state a plausible claim based on the sale of an allegedly defective medical device at their facility. *See generally* Compl., ¶¶ 77-96. Although Plaintiffs attempt to assert claims for lack of informed consent, negligence and gross negligence against the Healthcare Defendants, the vast majority of Plaintiffs' allegations in their Complaint are directed toward Bard. Tellingly, Plaintiffs' claims relate solely to the development, design, manufacture, testing, warning, marketing, and distribution of the Davol soft mesh hernia repair device mesh at issue, all of which are exclusively attributable to Bard. Indeed, Plaintiffs expressly contend that "[a]t all material times, Defendants Bard and Davol were responsible for designing, manufacturing, producing, testing, .studying, inspecting, labeling, marketing, advertising, selling, promoting, and distributing their Hernia Mesh Devices, and providing warnings/information." Compl., at ¶ 59. Further, Plaintiffs continually allege Bard concealed, understated, and/or misrepresented the purported risks of the Davol soft mesh hernia repair device to the healthcare community, including the Healthcare Defendants, contending Bard "made claims regarding the benefits of implanting the Devices but minimized or omitted their risks and adverse effects." *Id*. ¶ 63. Similarly, the Complaint alleges Bard "failed to provide sufficient warnings and instructions that would have put Linda, her health care providers, and the general public on notice" of the product's potential dangers. *Id*. ¶ 64. Plaintiffs claim specific properties of the Bard hernia repair device at issue—solely in Bard's control—caused Plaintiff's alleged injuries: "[a]s a result of their defective design and or manufacture, an unreasonable risk of severe adverse

reactions can occur, including but not limited to . . . infection." *Id.* ¶ 66; *see also* ¶ 74 (alleging Bard did not warn Plaintiffs and their healthcare providers about specific risks, including infection). Finally, Plaintiffs allege numerous fraud claims, alleging that Bard misrepresented and omitted "material" safety information from Plaintiffs and the Healthcare Defendants with the intent to reduce reliance, and that those parties relied thereon to their detriment. *Id*. at ¶¶ 174-184. In sum, Plaintiffs dedicate nearly the entirety of their Complaint discussing the design, manufacturing, and warning defects in Bard's hernia repair devices, including the Davol soft mesh implant hernia repair device Plaintiff Linda Vaughn received.

35. Notably, however, there is no allegation that the Healthcare Defendants played any role in the design, manufacture, warnings, or marketing of the Davol soft mesh implant hernia repair device and because they did not—and could not—have had access to information that was allegedly withheld from the general public, the Healthcare Defendants cannot be held responsible for Plaintiffs' alleged injuries. In short, the thrust of Plaintiffs Complaint is that Bard – not the Healthcare Defendants – was responsible for the alleged defects in the design, manufacture, warnings, marketing, and sale of the Davol soft mesh implant hernia repair device that purportedly caused Plaintiffs' injuries.

36. By contrast, the claims against the Healthcare Defendants are based on whether they breached the duty of care in the provision of medical services to Plaintiff Linda Vaughn. Compl., ¶¶ 77-96. The crucial aspects of the two claims are diametrically opposed and logically inconsistent. In similar circumstances, courts have consistently found fraudulent joinder where plaintiffs have improperly joined product liability claims against pharmaceutical manufacturers with contradictory medical malpractice claims against healthcare providers. *See, e.g.*, *Baisden v. Bayer*, 275 F. Supp. 2d 759, 762-63 (S.D.W. Va. 2003) (denying remand where complaint alleged

that manufacturer concealed or misrepresented safety information regarding prescription drug, while alleging that physician was negligent in failing to warn of potential risks); *In re Baycol Prods. Litig.*, No. MDL 1431(MJD), 02-4835, 2003 WL 21223842, at *2 (D. Minn. May 27, 2003) (finding that a physician was fraudulently joined when allegations that he knew or should have known of Baycol's risks were inconsistent with allegations that the manufacturer concealed information).[4] As in the cases above, this Court should rule that the Healthcare Defendants are fraudulently joined.

38. Accordingly, the Court should not consider the Healthcare Defendants' in-state status as a bar to removal because the fraudulent joinder of the Healthcare Defendants is obvious under well-settled state law.

## IV. THE AMOUNT IN CONTROVERSY IS MET

38. Only a simple pleading that asserts a "plausible allegation" is necessary to show that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547 (2014). Once made, a defendant's allegations are presumed correct. *See id.* The amount in controversy in this case can be determined according to the allegations in Plaintiffs' Complaint, because cases involving "grievous injuries" and punitive

---

[4] Similarly, numerous courts have ruled that plaintiffs improperly joined malpractice claims against healthcare providers with product liability claims against prescription product manufacturers. *See, e.g.*, *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 505 (E.D. Cal. 2008) (holding that malpractice claims against healthcare providers were fraudulently misjoined with claims against manufacturers for the allegedly defective mesh patch, and "to preserve the interests of judicial expediency and justice so that all pre-trial discovery on the products liability case can be coordinated in a single forum."); *see also In re Guidant Corp., Implantable Defibrillators Prods. Liab. Litig.,* MDL No. 05-1708, Case No. 07-1129, 2007 WL 5377783, *7 (D. Minn. June 4, 2007) (severing and remanding only the claims against defendant hospital because "the basis for the causes of action against [the hospital] do not arise from the same transaction and occurrences as those in the causes of action against the [medical device manufactures]"); *In re Rezulin Prod. Liab. Litig.*, MDL No. 1348, 2003 WL 21276425, *1-2 (S.D.N.Y June 2, 2003) (finding claims against non-diverse physician were misjoined with claims against drug manufacturer); *Stone v. Zimmer, Inc.,* No. 09-08202-CIV, 2009 WL 1809990, *4 (S.D. Fla. June 25, 2009) ("The joinder of the malpractice claim against [the doctor] and the [pain management center] with the product liability claim against [the product manufacturer] is thus inappropriate because these claims do not both involve common questions of law or fact and do not assert joint, several or alternative liability arising out of the same transaction, occurrence or series of transactions or occurrences.") (internal quotation omitted).

damages "can provide a basis for a court to infer, based on its judicial experience and common sense, that the jurisdictional amount is met." *See, e.g., Hendrickson v. Gm LLC*, Civil Action No. 3:19-CV-447-CHB, 2019 U.S. Dist. LEXIS 237055, at *2-3 (W.D. Ky. Nov. 6, 2019) (ruling "[w]hen determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered ... unless it is apparent to a legal certainty that such cannot be recovered"). District courts in the Sixth Circuit have ruled "[i]f it appears likely from the face of the pleadings that damages will exceed $75,000, the Court can retain jurisdiction despite the [plaintiffs'] objections." *Burgett v. Troy-Bilt LLC*, No. CIV.A. 11-110-ART, 2011 U.S. Dist. LEXIS 115370, 2011 WL 4715176, at *2 (E.D. Ky. Oct. 5, 2011).

39. Plaintiffs allege multiple adverse events after the Davol soft mesh implant, claiming that Plaintiff Linda Vaughn has "endured, and will in the future endure, conscious mental, emotional, and physical pain and suffering, including the loss of enjoyment of life." Compl., ¶ 25. Plaintiff Linda Vaughn seeks damages "for her conscious mental, emotional, and physical pain and suffering,. . . for her hospital and medical expenses and expenses for care, maintenance, and rehabilitative services; and for her permanent impairment of the power to labor and earn money and perform household services." Compl., Prayer for Relief ¶ (a). Plaintiff Douglas Vaughn alleges damages "for his loss of the love, care, society, affection, companionship, aid, support, comfort, and conjugal relationship of his wife." *Id*. ¶ (b). Finally, Plaintiffs request punitive damages against all Defendants. *Id*. ¶ (c). Thus, given these allegations and the severity and type of injuries alleged in Plaintiffs Complaint, the amount-in-controversy requirement is met here because it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement. *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 296

(S.D.N.Y. 2001) (holding that the amount in controversy is satisfied where plaintiffs alleged economic loss, medical and health expenses, and claimed serious medical conditions).

40. Therefore, in light of the alleged nature of the injuries set forth in the Complaint, and the claimed damages for past and future non-economic and economic losses, including punitive damages, it is "facially apparent" that the amount in controversy exceeds $75,000, exclusive of interest and costs, *see In re Rezulin*, 133 F. Supp. 2d at 296, and Bard sufficiently alleges the basis for diversity jurisdiction at the notice-of-removal stage. *See Dart*, 135 S. Ct. at 553.

## V. REMOVAL IS OTHERWISE PROPER

41. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders and the current state court docket sheet are attached to this Notice of Removal as **Exhibit 2.**

42. Bard will file a copy of this Notice of Removal with the Jefferson Circuit Court,, the state court in which this action is currently pending, as required by 28 U.S.C. § 1446(d). Defendants' Notice to Plaintiffs of Filing of Notice of Removal is also being filed and served upon Plaintiffs' counsel as required by 28 U.S.C. § 1446(d).

**WHEREFORE**, Defendants, pursuant to 28 U.S.C. § 1441, respectfully remove this action from Jefferson Circuit Court of Jefferson County, Kentucky, to the United States District Court for the Western District of Kentucky.

This 31st day of October, 2022.

> Respectfully submitted,
>
> Stites & Harbison, PLLC
>
> By:    */s/ Carol Dan Browning*_____

Carol Dan Browning
Stites & Harbison, PLLC
400 West Market Street
Suite 1800
Louisville, KY 40202-3552
Telephone: 502-681-0516
Facsimile:  502-779-8232
cbrowning@stites.com

*Counsel for Defendants C. R. Bard, Inc., Davol Inc., Becton, Dickinson and Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of October, 2022, a true and correct copy of this Notice of Removal was served through CM/ECF on all counsel or parties via the Court's filing system and/or by depositing copies of all documents in the United States mail.

    Ann B. Oldfather (KBA 52553)
    Nicole A. Bush (KBA 97866)
    OLDFATHER LAW FIRM
    1330 South Third Street
    Louisville, Kentucky 40208
    Voice: 502.637.7200/Fax: 502.636.0066
    aoldfather@oldfather.com
    nbush@oldfather.com

    *Counsel for Plaintiffs Linda Vaughn*
    *and Douglas Vaughn*

    Clay A. Edwards
    Benjamin J. Weigel
    O'BRYAN, BROWN & TONER, PLLC
    401 South Fourth Street, Suite 2200
    Louisville, KY 40202 e
    dwardsc@obtlaw.com
    Phone: 502-585-4700

    *Counsel for Defendants, Kevin O' Koon, MD*
    *and Kentuckiana Surgical Specialists, PSC*

                                        By:    */s/ Carol Dan Browning*
                                                       Carol Dan Browning

1538434:2:LOUISVILLE